FILED

NOV 03 2010

CLERK U S BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## Central District of California

In re: GAYLE JOAN CARSON, Debtor )

    570 W. 24th Street, #10   )

    San Pedro, CA 90731    )

    xxx-xx-2628    )

Case No.: 2-10 -bk 57337
ER

Chapter 7

## COMPLAINT TO DETERMINE DISCHARGEABILITY OF MARITAL EQUALIZER PAYMENT AND ESTIMATED RELATED CLAIMS

1) Debtor has filed this case under Chapter 7 of the Bankruptcy Code on November 3, 2010. This court has jurisdiction over this action under 28 USC §1334. This proceeding is a core proceeding.

2) One of the unsecured debts owed by Debtor, which is listed on Schedule F – Creditors Holding Unsecured Claims, Continuation Page 3, is an "equalizer payment" in the amount of $84,000.00 payable to Robert Carson (hereinafter referred to as "Creditor"). This equalizer payment is listed in the "Agreement to Settle Property Rights and Other Marital Property"(hereinafter referred to as "Agreement") was entered into by Debtor and Creditor, executed on September 18, 2007 and which is filed in Collier County Circuit Court in Case No. 07-286-DR (hereinafter referred to as "Florida marital case").

3) Debtor obtained title to the Florida real estate and Ohio real estate and Debtor was to pay Creditor the equalizer payment. Creditor is the Co-debtor on the secured claims relating to the real estate (described in Schedule A of the Voluntary Petition herein – a copy of which is attached hereto as Exhibit A).

4) The Agreement was executed by Debtor in the mistaken belief Debtor would be able to either obtain financing to pay the equalizer payment or to sell the two parcels of residential real estate.

5) Debtor was unable to obtain financing sufficient to pay the equalizer payment as Debtor's income to expense ratio subsequent to the filing of the Agreement was too high for any lender to extend funding sufficient to make the full equalizer payment.

6) Debtor was able to negotiate a forty thousand dollar ($40,000) addition to the existing equity line of credit secured by the Florida condominium. This sum would have served to make up any shortfall in amount of net proceeds in the sale of either parcel of real estate.

7) Debtor was unable to sell the Ohio residence due to the willful interference of the creditor. Creditor threatened Debtor's realtor and removed the real estate sign from the lawn of the residence. Creditor has continuously resided in the Ohio residence. Further specifics of this interference are outlined in the "Motion to Vacate Portions of the Separation Agreement and Motion for Protective Order" filed in the Florida marital case (attached hereto as Exhibit B).

8) Debtor used the additional line of credit funds to make several mortgage payments on the two mortgages and equity line of credit listed in the Agreement, and used line of credit funds to repair and improve the Florida condominium in a good faith effort to make a sale of the Florida condominium more likely. However, the real estate market in Florida took a sharp downturn and despite having the condominium for sale for two years during "in season" periods (roughly November through June), Debtor was unable to sell the Florida condominium. Debtor leased the Florida property from August, 2010 through January, 2011. Debtor receives $1,100 in rent monthly.

9) Subsequent to the execution of the Agreement, Debtor lost her job as a paralegal with Henderson, Franklin, Starnes and Holt, PA, in February, 2010, and has been unable to obtain employment since that time. Debtor tried, without success, to find employment in Florida and moved to California on July 7, 2010, to pursue more numerous job leads. Debtor does continue to provide legal services as a solo practitioner (licensed in Florida and Ohio for clients in those states (total income for the previous 3 year period = $19,888.00). Debtor expects that level of self-employment income to continue and expects, at some unknown time, to be employed as a paralegal or legal assistant. However based on the current job market, lack of California legal experience, lack of California license to practice law and age (Debtor is 61, suffers from high blood pressure and has a limited number of employable years left), Debtor believes that any full time employment income received will be less that Debtor received from her previous employer ($58,000.00). Debtor has received approximately $2,000 from part-time

10) contract work as a paralegal while in California and currently has been hired as a part-time, on-call, vehicle evaluator for Kett Engineering (the compensation is $9.50/hr).

11) However at the time of this filing, Debtor has not been called to work and no wages have been received).

12) Based on Debtor's current lack of employment and with an income level far below the California median family income level of $41,079.00, Debtor has filed her involuntary petition with this court and will no longer have ownership or control over the real property that was part of the Agreement, upon whose value the equalizer payment was calculated. Debtor's current financial condition is likely to continue for a significant period of time.   Debtor will be unable to pay the equalizer payment, even in installments, and still maintain even a minimal standard of living.

13) Debtor has no other financial options or assets with which to make the equalizer payment.   Transfer of ownership of real estate to Creditor would be the only consideration available to Debtor with which to pay Creditor.

14) The Florida property is on the verge of foreclosure.  Creditor is making the mortgage payments on the Ohio property in which he resides.

15) Debtor has filed for bankruptcy protection for reasons other than to discharge this debt. Debtor has a total of $385,740.00 of assets ($384,000 of which is comprised by real estate) and $515,452.72 of liabilities.

16) Debtor hereby requests this Court enter an Order discharging Debtor's obligation to pay the marital equalizer payment and discharging any sums Creditor had, has or may have in the future with regard to sums expended by Creditor in regard to this equalizer payment (estimated on Schedule F as being $55,000 primarily for mortgage payments, which include real estate taxes, and any insurance, repairs and improvements, for the Ohio real property in which Creditor resides).

Date: November 3, 2010

Gayle Joan Carson, Debtor

Pro Se

# UNITED STATES BANKRUPTCY COURT

## Central District of California

In re: GAYLE JOAN CARSON, Debtor  )                                Case No.: _____  _____

    570 W. 24th Street, #10     )

    San Pedro, CA 90731       )                                Chapter 7

    xxx-xx-2628            )

## ORDER ON COMPLAINT TO DETERMINE DISCHARGEABILITY
## OF MARITAL EQUALIZER PAYMENT AND ESTIMATED RELATED CLAIMS

Upon consideration of the debtor's Complaint to Determine "Dischargeability of Marital Equalizer Payment and Estimated Related Claims", the Court orders that the Complaint be:

[___] GRANTED.

      The marital equalizer payment and all related claims are made a part of the Discharge order entered/to be entered in this case.

[___] DENIED.

      The debtor shall pay the equalizer payment and any related claims filed by Creditor as follows:

_____

_____

[___] SCHEDULED FOR HEARING.

      A hearing to consider the debtor's "Complaint to Determine Dischargeability of Marital Equalizer Payment and Estimated Related Claims" shall be held on _____, at_____ am/pm at_____.

Date:_____, 2010                                BY THE COURT:

                                         _____

                                         United States Bankruptcy Judge

IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT, IN AND
FOR COLLIER COUNTY, FLORIDA – CIVIL ACTION

IN RE:  THE MARRIAGE OF
GAYLE J. CARSON,
    Wife,

and                                Case No.  07-286-DR

ROBERT OTTO CARSON,
    Husband.
_____/

### AGREEMENT TO SETTLE PROPERTY
### RIGHTS AND OTHER MARITAL AFFAIRS

THIS AGREEMENT made and entered into this 18 day of September
2007, between GAYLE J. CARSON, hereinafter referred to as the "Wife",
and ROBERT OTTO CARSON, hereinafter referred to as the "Husband".
This agreement shall supersede any prior agreements.

### WITNESSETH

WHEREAS, the parties now are Husband and Wife, having been
married to each other on June 27, 1970 in Lorain, Ohio.

WHEREAS, the parties acknowledge that no minor children are at
issue in this cause, nor are any contemplated.  The Wife is not
currently pregnant.

WHEREAS, certain unhappy and irreconcilable differences have
arisen between the parties as a result of which they have separated
and are now living separate and apart from each other; and

WHEREAS, the parties desire to confirm their separation and make


RC

1

GC

all arrangements in connection therewith including the final settlement of all questions relating to their financial and property rights; the support and maintenance of the parties and other rights and obligations growing out of the marriage relations; and

WHEREAS, the Wife agrees to accept the full performance of the provisions hereof in final settlement and satisfaction of any and all claims and rights that she may now or hereafter have against the Husband for her support, maintenance and equitable distribution of property rights, and she releases and discharges the Husband absolutely and forever for the rest of her life from any and all demands for maintenance, alimony or any provision for her support, except as provided herein; and

WHEREAS, the Husband agrees to accept the full performance of the provisions hereof in final settlement and satisfaction of any and all claims and rights that he may now or hereafter have against his Wife for support, maintenance and equitable distribution of property rights, and he releases and discharges the Wife absolutely and forever for the rest of his life from any and all demands past, present or future for maintenance, alimony or any provision for his support, except as provided herein; and

WHEREAS, the Husband intends by this Agreement to discharge, settle and satisfy any and all claims and rights to money and property of any nature he may have or heretofore had against the Wife, and he releases and discharges the Wife from all such claims and rights forever, except as provided herein; and



2



WHEREAS, the Wife intends by this Agreement to discharge, settle and satisfy any and all claims and rights to money and property of any nature she may have or heretofore had against the Husband, and she releases and charges the Husband from all such claims and rights forever, except as provided herein; and

WHEREAS, the parties hereto each warrant and represent to the other that they, and each of them, fully understand all the terms, covenants, conditions, provisions and obligations incumbent upon each of them by virtue of this Agreement to be performed or contemplated by each of them hereunder, and each believes the same to be fair, just, reasonable and to their receptive individual best interest; and

WHEREAS, the parties intend that the payments made pursuant to the terms of this Agreement shall be deemed non – taxable income to the payee/spouse and non – deductible to the payer/spouse, unless expressly set forth otherwise; and

WHEREAS, the parties having awareness of the law which affects financial rights of spouses, including a statute popularly known as the "Equitable Distribution Statute", make this Agreement in full and complete satisfaction of any and all claims which the Wife may have against the Husband, and which the Husband may have against the Wife, including rights of equitable distribution which each may have under applicable present and future law, rights to distribution of property, rights to pensions and life insurance, etc. and instead make the financial provisions as set forth herein; and

WHEREAS, the parties expect to obtain a dissolution of marriage


RC

3

6C
GC

in the Circuit Court of the County of Collier, State of Florida;

WHEREAS, the Respondent agrees to execute a Stipulation and Waiver consenting that the notice requirement be waived; and

NOW THEREFORE, in consideration of the premises and of the mutual covenants and undertakings herein set forth, the parties agree as follows:

The parties do hereby adopt as part of this Agreement each of the recitals contained above in the RECITALS, and agree that they shall be binding upon the parties hereto by way of contract and not merely by way of recital or inducement; and such clauses are hereby confirmed and ratified as being true and accurate by each party.

### ARTICLE I

### COVENANT AGAINST INTERFERENCE FROM OTHER PARTY

It is mutually agreed that each party shall be free from interference, authority, and control, direct or indirect, by the other, as fully as if he or she were unmarried. Neither party shall molest, interfere with or harass the other, and neither shall come into, trespass or disturb the possessions of the other or any real or personal property mentioned in this agreement, or hereinafter acquired.

It shall be lawful for each of the said parties to conduct, carry on and engage in any employment, business or trade, whichever he or she may deem fit, free from control, restraint or interference directly or indirectly by the other in all respects as if such parties were sole and unmarried.



4



## ARTICLE II

### KNOWLEDGE OF ASSETS

The Wife and Husband declare that each is fully informed and cognizant of the extent of the income, property, estate and assets of the other after full and complete disclosure, each to the other made, and each hereby declares his or her complete satisfaction that such disclosure has been fully and frankly made, and accepts the same as true and correct and as having been given in good faith.

### ARTICLE III

### WAIVER OF TESTAMENTARY RIGHTS

A. Each party hereby waives, releases and relinquishes any and all rights that he or she may now have or may hereafter acquire under the laws of the State of Florida or any other jurisdiction:

1. To share, as a result of the marital relationship in the other party's estate upon the latter's death; or

2. To act as executor or administrator of the other's estate or to participate in the administration of the other's estate or to participate in the administration thereof;

3. This provision is intended to be and shall constitute a revocation of all prior testamentary dispositions made by one party in favor of the other and each party does hereby renounce any such dispositions or special bequests under any Last Will and Testament



5



heretofore executed by the other.

B. This waiver shall and does constitute a mutual waiver by the parties of their respective rights of election to take against each other's Last Will and Testament, now or hereafter in force, under Chapter 732 of the Florida Statutes, or any law amendatory thereof or supplemental thereto, or the same or similar law of any other jurisdiction.

C. It is the intention of the parties that their respective estates shall be administered and distributed in all respects as though no marriage had been solemnized between them. However, nothing herein contained is intended to or shall constitute a waiver, by either party, of any voluntary testamentary provision which may be made in his or her favor by the other, following the execution of this Agreement.

D. The consideration for each party's waiver and release of his or her rights as spouse in the other party's estate shall be the reciprocal release by the other party.

E. Notwithstanding the provisions of subparagraphs "A", "B", "C", and "D" of this article, nothing contained herein shall constitute:

1. A release or discharge of either party or of such party's estate or property, of or from any of such party's covenants, Agreements, premises, representations, warranties or other undertakings or obligations set forth in other paragraphs of this Agreement or a release, waiver, relinquishment or renunciation by



6



either party of his or her right, or the right of his or her respective heirs, legal representations, executors, administrators or assigns, to require and enforce performance of the other party's covenants, Agreements, promises, representations, warranties and other undertakings and obligations set forth in other paragraphs of this Agreement which do not otherwise terminate upon death; or

2. A release, waiver, relinquishment or renunciation by either party of any devise, bequest or other provisions for the benefit of such party which may be set forth in the Last Will and Testament (or any codicil thereto) executed after the date of this Agreement, of the other party.

## ARTICLE IV

### SEPARATE OWNERSHIP

Except as otherwise expressly set forth herein, each party shall own, as his or her separate property free of any claim or right of the other, all of the items of property, real, personal and mixed, of any kind, nature or description and wherescever situate, which are now in his or her name, control or possession, with full power to dispose of the same as fully and effectually in all respects and for all purposes as if married.

## ARTICLE V

### EQUITABLE DIVISION OF MARITAL ASSETS

Royal Fern Court Residence. The parties do own a condominium residence located at 15116 Royal Fern Court, Unit B-201, Naples,



7

Florida 34110 (hereafter "Royal Fern Court residence").

Upon execution of this agreement, the Husband shall deed the Royal Fern Court residence to the Wife and said property shall constitute the sole and exclusive property of the Wife. Husband hereby relinquishes all right, title and interest that he may have therein.

Simultaneous with this agreement, the Husband shall execute, acknowledge, and deliver any and all documents necessary to transfer title in and to the Royal Fern Court residence to the Wife. If the Husband fails to comply with this provision, the Husband shall pay to the wife all attorney's fees and costs and other expenses reasonably incurred as a result of his failure to execute the necessary instruments to transfer title to the Wife.

The Wife hereby warrants that she shall be solely liable for all expenses in connection with said Royal Fern Court residence. Said expenses shall include, but shall not be limited to, mortgage payments, association dues, fees and assessments, taxes, insurance, repairs and maintenance. If any action or proceeding is initiated seeking to hold the Husband liable for any mortgage payments, home equity line payments, association dues, fees, assessments, taxes, insurance, repairs and maintenance arising from the Royal Fern Court residence, the Wife shall defend the Husband at her expense whether or not the actions or proceedings are well founded and indemnify the Husband for all costs, expenses, attorney's fees and monies expended as a result of any action brought against the Husband regarding said



8



Royal Fern Court residence.  From this date forward, the Wife shall be entitled to claim the mortgage interest and real estate taxes from Royal Fern Court residence as deductions on her Federal and State income tax returns.

The Husband hereby assigns to the Wife all of his interest in any tax escrow funds in connection with the Royal Fern Court residence and there shall be no apportionment or adjustments for taxes, utilities or any other similar items relating to the Royal Fern Court residence. In addition, the Husband hereby assigns and transfers to the Wife all of his right title and interest which he may have in any insurance policy(s) covering or relating to the Royal Fern Court residence or to the contents thereof, and the Husband agrees that the Wife shall be sole and exclusive owner of said insurance policy(s).

Husband represents and warrants that he has not heretofore assigned, conveyed, transferred or hypothecated in any respect his ownership or any of his right, title or interest in the Royal Fern Court residence.

The Wife acknowledges that she will assume the entire cost basis of the Royal Fern Court residence for capital gains purposes.

The Wife shall be entitled to the contents of the Royal Fern Court residence.

Fitzwater Road Residence.  The parties do own a residence located at 11217 Fitzwater Road, Brecksville, Ohio 44141 (hereafter "Fitzwater Road residence").



9



Upon execution of this agreement, the Husband shall deed the Fitzwater Road residence to the Wife and said property shall constitute the sole and exclusive property of the Wife. Husband hereby relinquishes all right, title and interest that he may have therein.

Simultaneous with this agreement, the Husband shall execute, acknowledge, and deliver any and all documents necessary to transfer title in and to the Fitzwater Road residence to the Wife. If the Husband fails to comply with this provision, the Husband shall pay to the wife all attorney's fees and costs and other expenses reasonably incurred as a result of his failure to execute the necessary instruments to transfer title to the Wife.

The Wife hereby warrants that she shall be solely liable for all expenses in connection with said Fitzwater Road residence. Said expenses shall include, but shall not be limited to, mortgage payments, home equity line payments, association dues, fees and assessments, taxes, insurance, repairs and maintenance. If any action or proceeding is initiated seeking to hold the Husband liable for any mortgage payments, home equity line payments, association dues, fees, assessments, taxes, insurance, repairs and maintenance arising from the Fitzwater Road residence, the Wife shall defend the Husband at her expense whether or not the actions or proceedings are well founded and indemnify the Husband for all costs, expenses, attorney's fees and monies expended as a result of any action brought against the Husband regarding said Fitzwater Road residence. From this date forward, the


RC

10

GC

Wife shall be entitled to claim the mortgage interest and real estate taxes from Fitzwater Road residence as deductions on her Federal and State income tax returns.

The Husband hereby assigns to the Wife all of his interest in any tax escrow funds in connection with the Fitzwater Road residence and there shall be no apportionment or adjustments for taxes, utilities or any other similar items relating to the Fitzwater Road residence.   In addition, the Husband hereby assigns and transfers to the Wife all of his right, title and interest which he may have in any insurance policy(s) covering or relating to the Fitzwater Road residence or to the contents thereof, and the Husband agrees that the Wife shall be sole and exclusive owner of said insurance policy(s).

Husband represents and warrants that he has not heretofore assigned, conveyed, transferred or hypothecated in any respect his ownership or any of his right, title or interest in the Fitzwater Road residence.

The Wife acknowledges that she will assume the entire cost basis of the Fitzwater Road residence for capital gains purposes.

The Husband shall be entitled to the contents of the Fitzwater Road residence.

The Husband agrees to vacate the Fitzwater Road residence upon receipt of the equalizer payment from the Wife or on December 31, 2007, whichever is later.

670 Broadway Commercial Building:   The parties do own a commercial building located at 670 Broadway, Bedford, Ohio 44146



11

(hereafter "670 Broadway building").

Upon execution of this agreement, the Wife shall deed the 670 Broadway building to the Husband and said property shall constitute the sole and exclusive property of the Husband.    Wife hereby relinquishes all right, title and interest that she may have therein.

Simultaneous with this agreement, the Wife shall execute, acknowledge, and deliver any and all documents necessary to transfer title in and to the 670 Broadway building to the Husband.  If the Wife fails to comply with this provision, the Wife shall pay to the Husband all attorney's fees and costs and other expenses reasonably incurred as a result of her failure to execute the necessary instruments to transfer title to the Husband.

The Husband hereby warrants that he shall be solely liable for all expenses in connection with said 670 Broadway building.   Said expenses shall include, but shall not be limited to, mortgage payments to Dollar Bank (account number 001-0001-1219476-9001), association dues, fees and assessments, taxes, insurance, repairs and maintenance. If any action or proceeding is initiated seeking to hold the Wife liable for any mortgage payments, association dues, fees, assessments, taxes, insurance, repairs and maintenance arising from the 670 Broadway building, the Husband shall defend the Wife at his expense whether or not the actions or proceedings are well founded and indemnify the Wife for all costs, expenses, attorney's fees and monies expended as a result of any action brought against the Wife regarding said 670 Broadway building.  From this date forward, the Husband shall



12



be entitled to claim these immense of re estate taxes from
670 Broadway building as deductions on his Federal and State income
tax returns.

The Wife hereby assigns to the Husband all of her interest in any
tax escrow funds in connection with the 670 Broadway building and
there shall be no apportionment or adjustments for taxes, utilities or
any other similar items relating to the 670 Broadway building. In
addition, the Wife hereby assigns and transfers to the Husband all of
her right, title and interest which she may have in any insurance
policy(s) covering or relating to the 670 Broadway building or to the
contents thereof, and the Wife agrees that the Husband shall be sole
and exclusive owner of said insurance policy(s).

Wife represents and warrants that she has not heretofore
assigned, conveyed, transferred or hypothecated in any respect her
ownership or any of her right, title or interest in the 670 Broadway
building.

The Husband acknowledges that he will assume the entire cost
basis of the 670 Broadway building for capital gains purposes.

The Husband shall be entitled to the contents of the 670 Broadway
building.

Robert Carson Law Firm. Upon execution of this agreement, the
Wife shall convey all interest she has in the business known as Robert
Carson Law Firm including all assets and property therein or owned by
Robert Carson Law Firm shall constitute the sole and exclusive



13



and interest that she may have therein.

The Husband hereby warrants that he will indemnify and hold Wife harmless from loan payments, insurance, taxes, maintenance or tort liability arising from the Robert Carson Law Firm. If any action or proceeding is initiated seeking to hold the Wife liable for any loan payments, insurance, taxes, maintenance, or tort liability in connection with Robert Carson Law Firm, the Husband shall defend the Wife at his expense whether or not the actions or proceedings are well founded and indemnify the Wife for all costs, expenses, attorney's fees and monies expended as a result of any action brought against the Wife regarding said Robert Carson Law Firm.

Cleveland Excavating Inc. Upon execution of this agreement, the Wife shall convey all interest she has in the business known as Cleveland Excavating Inc, including all assets and property therein or owned by the Cleveland Excavating Inc, including but not limited to the Sophia Avenue lot in Cleveland, Ohio shall constitute the sole and exclusive property of the Husband. Wife hereby relinquishes all right, title and interest that she may have therein.

The Husband hereby warrants that he will indemnify and hold Wife harmless from loan payments, insurance, taxes, maintenance or tort liability arising from the Cleveland Excavating Inc. If any action or proceeding is initiated seeking to hold the Wife liable for any loan payments, insurance, taxes, maintenance, or tort liability in connection with Cleveland Excavating Inc, the Husband shall defend the


RC

14


GC

Wife at his expense whether or not the actions or proceedings are well founded and indemnify the Wife for all costs, expenses, attorney's fees and monies expended as a result of any action brought against the Wife regarding said Cleveland Excavating Inc.

Retirement/Investment Accounts: The parties agree that any retirement or pension plan in the wife's name shall constitute the sole and exclusive property of wife, and the husband hereby relinquishes all right, title and interest that he may have therein. The parties agree that any retirement or pension plan in the husband's name shall constitute the sole and exclusive property of husband including but not limited to US Bank IRA ($1,100), Western Reserve ($2,582), Western Reserve ($2,131) and Edward Jones IRA (2,200), and the Wife hereby relinquishes all right, title and interest that she may have therein.

Other Accounts and Stock. The parties agree that any bank or brokerage accounts in the husband's name including American Century ($33,440), Bank of America accounts (0), Charter One ($947), Dollar Bank ($3,913), Dow Chemical ($383), Net Stock/Share-builder ($281), Prudential Stock ($2,400), Third Federal ($390), Third Federal ($844), Third Federal ($850), and US Bank ($8,006) shall constitute the sole and exclusive property of husband and the Wife hereby relinquishes all right, title and interest that she may have therein.

Personal Property. The parties have previously agreed on the division of personal property and have each received all of the personal property pursuant to said agreement. Accordingly, the



15



property in the possession of the Wife at the time of signing this agreement shall constitute the sole and exclusive property of the Wife and the property in the possession of the Husband at the time a signing this agreement shall constitute the sole and exclusive property of the Husband.

Automobiles. The 2006 Nissan Maxima leased in the Wife's name and in Wife's possession shall constitute the sole and exclusive property of the Wife, and the Husband hereby relinquishes all right, title and interest that he may have therein. The Wife hereby warrants that she will maintain the monthly payments on said 2006 Nissan Maxima and that she shall indemnify and hold Husband harmless from installment lease payments, insurance, taxes, maintenance or tort liability arising from the 2006 Nissan Maxima. If any action or proceeding is initiated seeking to hold the Husband liable for any installment lease payments, insurance, taxes, maintenance, or tort liability arising from the 2006 Nissan Maxima, the Wife shall defend the Husband at her expense whether or not the actions or proceedings are well founded and indemnify the Husband for all costs, expenses, attorney's fees and monies expended as a result of any action brought against the Husband regarding said 2006 Nissan Maxima.

Simultaneous with this agreement, the Husband shall execute, acknowledge and deliver any and all documents necessary to transfer title in and to the 2006 Nissan Maxima to the Wife. If the Husband fails to comply with this provision, the Husband shall pay to the Wife all attorney's fees and costs and other expenses reasonably incurred



16

$\underset{\text{GC}}{\cancel{\varphi}C}$

as a result of his failure to execute the necessary instruments to transfer title to the Wife.

The automobile registered in the Husband's name and presently in the possession of the Husband (hereafter "Husband's automobile") shall constitute the sole and exclusive property of the Husband, and the Wife hereby relinquishes all right, title and interest she may have therein.

The Husband hereby warrants that he shall indemnify and hold Wife harmless from all installment payments, insurance, taxes, maintenance or tort liability arising from husband's automobile. If any action or proceeding is initiated seeking to hold the Wife liable for any installment payments, insurance, taxes, maintenance or tort liability arising from Husband's automobile, the Husband shall defend the Wife at his expense whether or not the actions or proceedings are well founded and indemnify the Wife for all costs, expenses, attorney's fees and monies expended as a result of any action brought against the Wife regarding Husband's automobile.

Simultaneous with this agreement, the Wife shall execute, acknowledge, and deliver any and all documents necessary to transfer title in and to the Husband's automobile to the Husband. If the Wife fails to comply with this provision, the Wife shall pay to the Husband all attorney's fees and costs and other expenses reasonably incurred as a result of her failure to execute the necessary instruments to transfer title to the Husband.

Equalizer Payment:    The Wife agrees to pay Eighty Four



17

<img>GC</img>

Thousand dollars ($84,000.00) to the Husband to equalize the distribution of assets and liabilities between the parties. The Wife shall pay the equalizer payment in full within 90 days of signing this agreement.

Liabilities. For the purpose of this paragraph, "Bills" are defined to be charge accounts and obligations which accrue and are incurred in the ordinary course of events on a daily basis by a Husband and Wife. Each party agrees that they shall be responsible for and hold the other party harmless for the payment of any bills incurred in their own name.

Except as otherwise provided herein, each party hereto agrees that they shall be responsible for and hold the other party harmless for the payment of any bills incurred by either of them subsequent to the date this agreement has been entered into by both parties. In the event there are any bills incurred by one party by the use of the credit of the other party subsequent to the date this agreement is entered into by both parties, the party whose signature appears on the charge in question shall be responsible for the payment of said bill and shall indemnify and hold the other party harmless for the payment of the same.

The Husband shall be solely liable for any existing or future credit card debts and medical liabilities incurred in his name (approximately $37,000) and he shall indemnify and hold Wife harmless from liabilities arising in his name. The Wife shall be solely liable for any existing or future credit card debts and medical liabilities



18

$\frac{6C}{GC}$

incurred in her name (approximately $11,000) and she shall indemnify and hold Husband harmless from liabilities arising in her name.

At the time of entry of this Marital Settlement Agreement, no other known outstanding marital debts are owed by the parties, other than those specifically addressed in this agreement. In the event that a debt is discovered, the party who incurred said debt shall be solely responsible for its payment, and shall indemnify and hold the other party harmless from any liability arising therefrom.

D. Mutual Waivers of Support/Alimony:

1.    The parties do hereby acknowledge that the circumstances are such that hereafter, neither party is required or obligated to support and maintain the other party.

2.    The parties do hereby declare that they do not desire, require or wish any support or maintenance to be paid to them by the other party.

3.    The parties state that in no event and under no circumstances, now or in the future, do either of them desire or require the other party to make any payment for his or her support, ordinary or extraordinary, directly or indirectly.

4.    The parties declare and acknowledge that each has been and is self - supporting and is capable of earning such sums as are reasonably required to maintain him or her in the standard of living which the parties had during the period that they resided together as Husband and Wife. The continued ability to have such earnings is not, however, a condition of any of the other provisions of this Article



19



and shall not be deemed in any respect to impair the other provisions
of this Article.

5.    The parties further agree that each shall be responsible for
payment of their individual hospitalization and medical insurance
coverage.

## ARTICLE VI

## TAXATION

The parties agree that Joseph P. Jameson, Esq. has not
provided any tax advice with reference to the various provisions of
this document and the ramifications, if any, that may occur as a
result of the execution of this Marital Settlement Agreement.    The
parties have each been directed to discuss the tax ramifications of
this agreements contained herein with the tax counsel of their choice.

The parties filed federal income tax returns during the marriage.
Each party warrants to the other that the returns are correct and
complete to the extent that income, credits, deductions, adjustments
or other matters of the parties are included, that all deductions have
been properly taken and that no audit or examination is pending.  Each
party warrants to other that all the taxes due have been or will be
paid, that no federal tax assessment for unpaid taxes has been made
against them and that there are no federal tax liens against them.    If
the returns are examined by the Internal Revenue Service subsequent to
execution of this agreement and if any deficiencies or taxes are
assessed, the party or parties to whom the income or deficiencies are
attributable shall pay all taxes interest and penalties and any



20



expenses incurred because of the examination.    If any funds are received as a result of an examination, the refunds shall be the property of the party to whose income the refund is attributable. Each party shall promptly notify the other any pending administrative or legal proceeding concerning income taxes.    If any claim action or proceeding is initiated seeking to hold the other party liable for any unpaid taxes, interest, penalties cr other expenses relating to a tax return, the party to whom the deficiencies are attributable will, at his sole expense, defend the other party against any such claim, action, or proceeding whether or not well founded, including payment of any and all reasonable attorneys fees, including appellate fees.

## ARTICLE VIII

### ATTORNEY'S FEES

Husband and Wife acknowledge that the Wife has been represented by the Law Office of Joseph P. Jameson.    Husband and Wife further acknowledge that this agreement has been prepared by Wife's attorney at Wife's request.    Husband further acknowledges that he has not obtained any legal advice from Wife's counsel nor has Wife's counsel assumed or offered to assume any legal representation of Husband. Husband further acknowledges that he has obtained or has been advised of his right to obtain independent legal advice prior to the signing of this agreement, and has determined that he understands the terms and nature of this agreement, and is satisfied with the same.    The Husband agrees to pay $2,500 to Wife's counsel in full satisfaction of his one half of her Attorney fees and costs in this matter.    He shall



21



pay said amount on or before October 1, 2007.   The parties shall be responsible for all of their other fees and costs incurred in this matter.   The parties agree to share the mediation cost equally.

## ARTICLE VIII

### ENFORCEMENT EXPENSES

In the event that either party defaults with respect to any payment with respect to any other obligation under this Agreement, and said default is not remedied within ten (10) days after the sending of a written notice by certified mail to the defaulting party specifying said default, the defaulting party agrees to indemnify the other party against, and to reimburse him or her for any and all costs, expenses and attorney's fees resulting from or made necessary by the bringing of any suit or other proceeding or the defense thereof, or to enforce any of the terms or conditions of this Agreement to be performed or complied with by the defaulting party, or to enforce any of the other party's rights to recover any amount to be paid to him or her by the defaulting party pursuant to this Agreement, provided such suit or other proceeding results in a judgment, decree or order in favor of the other party.

For the purposes of this Agreement, it is understood and agreed that in the event that a suit or other proceeding shall be instituted to enforce any of the terms, covenants or conditions of this Agreement, and after the institution of such action or proceeding and before judgment is or can be entered, the defaulting party shall comply with such term or condition of this Agreement, then in that



22



event, the suit, motion or proceeding so instituted shall be deemed to have resulted in a judgment, decree or order in favor of the non-defaulting party for the purpose of recovering reasonable expenses including counsel fees.

## ARTICLE IX

### POSSIBLE INVALIDITY

In case any provisions of this Agreement should be held to be contrary to or invalid under the law of any country, state or other jurisdiction, such illegality or invalidity shall not affect in any way any other provision hereof, all of which shall continue, nevertheless, in full force and effect; any provision which is held to be illegal or invalid in any country, state or other jurisdiction shall, nevertheless, remain in full force and effect in any country, state or jurisdiction in which such provision is legal and valid.

## ARTICLE X

### LEGAL INTERPRETATION

This Agreement and all of the rights and obligations of the parties hereunder shall be construed according to the laws of the State of Florida as an Agreement made and to be performed within said State.

## ARTICLE XI

### INDEPENDENT COVENANTS

Each of the respective rights and obligations of the parties hereunder shall be deemed independent and may be enforced



23

$\frac{\mathcal{C}}{GC}$

independently irrespective of any of the other rights and obligations set forth herein.

## ARTICLE XII

### MODIFICATION AND WAIVER

Neither this Agreement ncr any provision hereof shall be amended or modified except by an Agreement in writing duly subscribed and acknowledged with the same formality as this Agreement, except as expressly provided herein.   Any waiver by either party of any provisions of this Agreement or any right hereunder shall not be deemed a continuing waiver and shall not prevent or stop such party from thereafter enforcing such right, and the failure of either party to insist in any one or more instances upon the strict performance of any of the provisions of this Agreement by the other party shall not be construed as a wavier or relinquishment for the future of such provisions, but the same shall continue in full force and effect .

## ARTICLE XIII

### BANKRUPTCY

The obligations of this Agreement shall not, in any way, be subject to discharge in any bankruptcy proceedings.

## ARTICLE XIV

### COUNTERPART COPIES OF AGREEMENT

This Agreement may be executed by the separate signatures and acknowledgments of the parties hereto on counterpart copies hereof and shall become effective when counterparts so executed and acknowledged have been exchanged by the parties.


RC

24

$6 \checkmark$
GC

## ARTICLE XV

### IMPLEMENTATION

The Husband and Wife shall, at any and all times, upon request by the other party or his or her legal representatives, promptly make, execute and deliver any and all other and future instruments as may be necessary or desirable for the purpose of giving full force and effect to the provisions of this Agreement, without charge therefore.

## ARTICLE XVI

### RECONCILIATION AND MATRIMONIAL DECREES

1.    This Agreement shall not be invalidated or otherwise affected by a reconciliation or a resumption of marital relations between the parties unless they have executed and acknowledged a written statement expressly setting forth that they are canceling this Agreement.    This Agreement shall not be invalidated or otherwise affected by any decree or judgment made in any court in any pending or future action or proceeding between the parties.

2.    Each party agrees that the provisions of this Agreement shall be submitted to any court in which either party may seek a judgment, order or decree in a matrimonial action or any other action or proceeding affecting the marital status of the parties and that the provisions of this Agreement shall be incorporated in said judgment, order or decree with such specificity as the court shall deem permissible and by reference as may be appropriate under law and under the rules of court.    However, notwithstanding said incorporation's,



RC

25

GC

the provisions of this Agreement shall survive any decree, order or
judgment and shall not merge therein, and this Agreement may be
independently enforced.

WITNESS TO WIFE:

STATE OF FLORIDA
COUNTY OF COUNTY

GAYLE J. CARSON

    I HEREBY CERTIFY that on this day before me, an officer duly
qualified to take acknowledgments, personally GAYLE J. CARSON, to me
known to be the person described in and who executed the foregoing
Martial Settlement Agreement, and acknowledged before me that she
executed the same.

    WITNESS my hand and official seal in the state and county last
aforesaid this ____ day of September, 2007.


**JOSEPH P. JAMESON**
MY COMMISSION # DD695839
EXPIRES August 26, 2011
(407) 398-0153    FloridaNotaryService.com

NOTARY PUBLIC STATE OF FLORIDA

____ Personally Known OR
X ____ Produced Identification

Type of Identification Produced
FLA. DCLVERS LLLNY

WITNESS HUSBAND:

ROBERT OTTO CARSON

STATE OF FLORIDA
COUNTY OF COLLIER

    I HEREBY CERTIFY that on this day before me, an officer duly
qualified to take acknowledgments, personally appeared ROBERT OTTO
CARSON to be the person described in and who executed the foregoing
Marital Settlement Agreement, and acknowledged before me that he

26

RC

GC

executed the same.

WITNESS my hand and official seal in the state and county last
aforesaid this _____ day of September 2007.



JOSEPH P. JAMESON
MY COMMISSION # DD695839
EXPIRES August 26, 2011
(407) 398-0153    FloridaNotaryService.com

_____
NOTARY PUBLIC STATE OF FLORIDA

_____ Personally Known OR
__X__ Produced Identification

Type of Identification Produced__
OH U DZWENS LEMME

_____

27

RC



IN THE CIRCUIT COURT
OF THE TWENTIETH JUDICIAL CIRCUIT
COLLIER COUNTY FLORIDA

Gayle J. Carson, Petitioner                Civil Case # 07-286 DR

                                           PETITIONER'S MOTION TO
                                           VACATE PORTIONS OF THE
                                           SEPARATION AGREEMENT
                                           And
                                           PETITIONER'S MOTION FOR
                                           PROTECTIVE ORDER

Robert Otto Carson, Respondent


Petitioner herein, Gayle J. Carson, hereby petitions this Court to enter an order vacating portions of the Separation Agreement entered into by the parties as part of the Court Order for Dissolution entered in the instant matter for the following reasons:

1.) Respondent has willfully interfered with the listing and showing of the residence located at 11217 Fitzwater Road, Brecksville, Ohio, owned by Petitioner. Exhibit A.

2.) Respondent has made repeated mentions of "gun" and "pistol" to Petitioner's real estate agent. Exhibit A.

3.) Respondent has obscured and subsequently removed "For Sale" signs placed by Petitioner's realtor on the Brecksville, Ohio residence. Exhibit A.

1

4.) Petitioner has been estopped from selling the Brecksville, Ohio residence by actions of the Respondent and has expended funds in hiring Ohio legal counsel to try to remedy the situation, to no avail. Exhibit B.

5.) To the best of Petitioner's knowledge, information and belief the last appraised value of the Brecksville, Ohio property was $206,000 and the balance of the sole mortgage on the property is approximately $104,000. Respondent has been living in said property continually and has made a number of mortgage payments on the mortgage secured thereby. Petitioner had made several mortgage payments thereon as well.

6.) Petitioner has had the Naples real estate (15116 Royal Fern Court, B201) listed for sale for two years and has been unable to sell the property. Exhibit C.

7.) To the best of Petitioner's knowledge, information and belief, the Naples, Florida property has a market value of approximately $240,000 and is encumbered with a first mortgage whose balance is approximately $96,000 and which is also encumbered by a line of credit whose balance is approximately $100,000. Petitioner has made the mortgage payments and the line of credit payments secured thereby.

8.) Respondent has repeatedly called Petitioner's previous place of work and made comments about Petitioner to other employees. Exhibit D.

9.) Petitioner has lost her job and is not currently employed by a law firm. Her only income comes from self-employment (contract jobs from referring counsel). Petitioner is on the verge of bankruptcy.

10.) Petitioner was unable to obtain financing to pay the equalizer payment to the Respondent due to the fact that no bank or financial institution would lend the amount of the required payment based on Petitioner's disproportionate debt to income ratio subsequent to the entry of the Order of Dissolution (approximately $320,000 in secured debt vs approximately $63,000 of income). Petitioner was able to obtain an increase in the line of credit availability and intended to use these funds to make up any shortfall in the net proceeds available to pay Respondent when the Ohio (or Florida)

2

property was sold. Petitioner was unable to sell the Ohio property to make the equalizer payment due to Respondent's actions preventing any sale. Petitioner has been unable to sell the Florida property.

11.) The value of the Florida property has changed substantially (over $100,000) since the Order was entered.

12.) Petitioner's circumstances have changed substantially since the Order was entered.

13.) It is impossible for Petitioner to perform the obligations contained in the Separation Agreement due to actions of the Respondent preventing sale of the Ohio real estate; due to mistake of fact by Petitioner that she could obtain sufficient financing to pay the equalizer payment without a sale of the properties; due to Petitioner's inability to sell the Florida property and due to Petitioner's dramatically altered financial circumstances.

14.) Given the actions of Respondent and the overwhelming array and severity of changed economic circumstances affecting the Separation Agreement, as entered, it would be unconscionable for the Separation Agreement to stand as entered without modification.

## PETITION FOR PROTECTIVE ORDER

15.) Petitioner re-alleges all of the statements contained in Items 1-14 above as if fully re-written herein.

16.) Respondent has propounded two sets of Requests for Admission, a Request for Production of Documents and three sets of Interrogatories, much of the discovery being unrelated to marital issues or the marital property of the parties

17.) The scope of the requested discovery and costs related to copying of responses is unduly burdensome.

18.) In specific, the following discovery requests are either unduly burdensome or not relevant to the property settlement in the dissolution action:

3

A. Request For Production of Documents:

1. Requests 3, 4, 11, 12,13, 14, 20, 28, 29, 30, 31, 32, 35 and 36.

B. Respondent's First Set of Interrogatories:   1-6 (respondent has this
information available to him); 7, 8, 10-13 are speculative, 18-20.

C. Respondent's Second Set of Interrogatories 1-11, 16.

WHEREFORE, Petitioner prays that the Court issue an Order providing the following
relief:

1.) Vacating those provisions of the Separation Agreement as part of the Order of
Dissolution that relate to the disposition of the real property of the parties, the
obligations secured thereby and the obligation of the equalizer payment;

2.) Order that the residences of the parties be sold and determine the percentage
of any net proceeds, if any, distributable to each party, deleting
indemnification clauses relating to the obligations on said residences and
deleting the obligation of an equalizer payment;

3.) Issuing a protective order as to discovery; and

4.) All other further relief as may be equitable and proper.

## CERTIFICATE OF SERVICE

The undersigned further certifies that a copy hereof has been furnished to
Respondent, Robert O. Carson at 670 Broadway Avenue, Bedford, Ohio, 44146 on June
_____, 2010.

Gayle J. Carson
15116 Royal Fern Crt.
B201
Naples, FL 34110

4

FORM B104 (08/07)                                                                 2007 USBC, Central District of California

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Page 2) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

| PLAINTIFFS | DEFENDANTS |
|---|---|
| GAYLE JOAN CARSON | ROBERT CARSON |

| ATTORNEYS (Firm Name, Address, and Telephone No.) | ATTORNEYS (If Known) |
|---|---|
| Pro Se | UNKNOWN |

RECEIVED
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY _____ Deputy Clerk
NOV 03 2010

| PARTY (Check One Box Only) | PARTY (Check One Box Only) |
|---|---|
| ☒ Debtor   ☐ U.S. Trustee/Bankruptcy Admin | ☐ Debtor   ☐ U.S. Trustee/Bankruptcy Admin |
| ☐ Creditor   ☐ Other | ☒ Creditor   ☐ Other |
| ☐ Trustee | ☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)
MARITAL ~~EQUAL~~ SETTLEMENT EQUALIZER PAYMENT SHOULD BE
DISCHARGED AS DEBTOR HAS NO JOB AND REAL PROPERTY (FL) IS
~~BEING~~ ABOUT TO BE FORECLOSED.

**NATURE OF SUIT**
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner – §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

*(continued next column)*

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☒ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

| Other Relief Sought | DISCHARGEABILITY OF MARITAL EQUALIZER PAYMENT AND ESTIMATED RELATED CLAIMS |
|---|---|

FORM B104 (08/07), page 2                                                    2007 USBC, Central District of California

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| **NAME OF DEBTOR** <br> GAYLE JOAN CARSON | | **BANKRUPTCY CASE NO.** <br> 2-10-bk-57337-ER |
| **DISTRICT IN WHICH CASE IS PENDING** <br> CENTRAL | **DIVISIONAL OFFICE** | **NAME OF JUDGE** <br> ERNEST M ROBLES |
| **RELATED ADVERSARY PROCEEDING (IF ANY)** | | |
| **PLAINTIFF** <br> N/A | **DEFENDANT** | **ADVERSARY PROCEEDING NO.** |
| **DISTRICT IN WHICH ADVERSARY IS PENDING** | **DIVISIONAL OFFICE** | **NAME OF JUDGE** |
| **SIGNATURE OF ATTORNEY (OR PLAINTIFF)** | | |
| **DATE** <br> 11/3/10 | **PRINT NAME OF ATTORNEY (OR PLAINTIFF)** <br> GAYLE JOAN CARSON | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the debtor. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendents.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number

GAYLE JEAN CARSON
500 W 24th #10
SAN PEDRO, CA 90231
TEL: 239 206 -9540

Attorney for Plaintiff

FOR COURT USE ONLY

RECEIVED
NOV 03 2010
CLERK U S BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY                    Deputy Clerk

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA**

In re:

GAYLE JEAN CARSON

Debtor.

GAYLE JEAN CARSON

Plaintiff(s),

vs.

ROBERT CARSON

Defendant(s).

CHAPTER   7

CASE NUMBER   2:10-bk-57337-ER

ADVERSARY NUMBER

*(The Boxes and Blank Lines below are for the Court's Use Only) (Do Not Fill Them In)*

**SUMMONS AND NOTICE OF
STATUS CONFERENCE**

TO THE DEFENDANT:  A Complaint has been filed by the Plaintiff against you.  If you wish to defend yourself, you must file with the Court a written pleading, in duplicate, in response to the Complaint.  You must also send a copy of your written response to the party shown in the upper left-hand corner of this page.  Unless you have filed in duplicate and served a responsive pleading by _____  _____, the Court may enter a judgment by default against you for the relief demanded in the Complaint.

A Status Conference on the proceeding commenced by the Complaint has been set for:

| Hearing Date: | Time: | Courtroom: | Floor: |
|---|---|---|---|

❏   **255 East Temple Street, Los Angeles**          ❏   **411 West Fourth Street, Santa Ana**

❏   **21041 Burbank Boulevard, Woodland Hills**     ❏   **1415 State Street, Santa Barbara**

❏   **3420 Twelfth Street, Riverside**

PLEASE TAKE NOTICE that if the trial of the proceeding is anticipated to take less than two (2) hours, the parties may stipulate to conduct the trial of the case on the date specified, instead of holding a Status Conference.  Such a stipulation must be lodged with the Court at least two (2) Court days before the date set forth above and is subject to Court approval.  The Court may continue the trial to another date if necessary to accommodate the anticipated length of the trial.

Date of Issuance: _____  _____

**KATHLEEN J. CAMPBELL
Clerk of Court**

By: _____
                    *Deputy Clerk*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*February 2010 (COA-SA)*

**F 7004-1**